J-S13003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: P.T.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- |
| APPEAL OF: C.S., MATERNAL GRANDMOTHER | No. 1588 MDA 2021 |

Appeal from the Dispositional Order Entered November 18, 2021
In the Court of Common Pleas of Northumberland County
Juvenile Division at No: CP-49-DP-0000083-2021

BEFORE:  STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                          **FILED JUNE 09, 2022**

Appellant, C.S. ("Maternal Grandmother"), appeals from the November 18, 2021 dispositional order adjudicating P.T.G. ("Child"), her minor grandchild, dependent, removing him from the home of Maternal Grandmother and M.G., his mother ("Mother"), placing Child in foster care, and ordering supervised visitation with a goal of reunification.  We affirm in part and vacate in part.

Northumberland County Children and Youth Services ("CYS" or the "Agency") has been involved with Child's family since 2011, when he was four years old.  Child was first adjudicated dependent on November 30, 2011 and placed in legal custody of CYS.  He remained in placement until February of

---

[*] Former Justice specially assigned to the Superior Court.

2013, after which Child and Mother lived with Maternal Grandmother and Child's maternal grandfather, who has since passed away. On December 27, 2016, CYS received another referral when Mother overdosed on heroin in the family home. CYS first received concerns about truancy from Child's school in November of 2019, and again on March 5, 2020. On February 18, 2021, CYS met with Maternal Grandmother regarding Child's failure to complete schoolwork and his failure to login to remote learning sessions. Another meeting occurred on February 23, 2021 regarding, among other things, Child's pending failure of several of his seventh-grade courses. CYS filed a dependency petition on March 18, 2021 alleging that Child was without proper parental care or control, and that he was habitually truant from school. The trial court conducted a hearing on May 6, 2021 and declined to adjudicate him dependent or remove him from the home.

The instant matter arose from an October 13, 2021 referral informing CYS that Child had completely failed to attend school during the 2021-2022 school year. N.T., 11/10/21, at 16. Several subsequent attempts to contact the family were unsuccessful. *Id.* at 16-18. On November 9, 2021, CYS personnel and a local police officer traveled to Maternal Grandmother's home, where Mother and Child both lived. Initially no one answered the door, but Mother eventually arrived as a passenger in a car. *Id.* at 18. She was slumped over in the back of the car, and after exiting the vehicle she exhibited slurred speech and difficulty in standing. *Id.* at 18; N.T. 11/18/21, at 13.

- 2 -

Mother claimed she had just come from a methadone clinic. N.T 11/18/21, at 23. While Mother was present, the CYS caseworker was able to contact Maternal Grandmother—Child's legal guardian—by phone. N.T. 11/10/21, at 18. Maternal Grandmother claimed to be shopping in Selinsgrove, but the police officer heard voices from inside the home. *Id.* at 18-19; N.T. 11/18/21, at 16-18. Eventually, Maternal Grandmother came to the door with Child. *Id.* She was unable to provide any verification that Child was enrolled in any cyber school or private school. N.T. 11/10/21, at 18-19; N.T. 11/18/21, at 19-20. Also, Grandmother spoke of difficulties in her life stemming from her deteriorating mental and physical health and the recent death of her husband, Child's grandfather. N.T. 11/10/21, at 19; N.T. 11/18/21, at 16.

On November 9, 2021, CYS received a verbal order granting them physical custody of Child. N.T. 11/10/21, at 19-20. A shelter care hearing took place on November 10, 2021, and the trial court granted CYS's petition for protective custody. *Id.* at 30-31. CYS filed a dependency petition on November 12, 2021, alleging that Child was without proper parental care or control.

At the November 18, 2021 hearing on the petition, school officials confirmed Child's total absence from school during the Fall of 2021. N.T., 11/18/21, at 28. Child's school received nothing regarding Child's enrollment in any other school until a November 12, 2021 request from Milton Area School District. *Id.* at 46. Child failed two subjects as a seventh grader the previous

year and never completed a required summer remedial program. *Id.* at 29-32, 44-45. Thus, he would have had to repeat seventh grade when he returned. *Id.* at 50. The principal confirmed that truancy letters had been sent on October 26, 2021 and November 9, 2021. *Id.* at 48. A school attendance improvement meeting between Mother, Maternal Grandmother, and school officials occurred on November 15, 2021, just before the hearing. *Id.* at 43, 50. Otherwise, the truancy proceeding had gone no further. Rather, the school referred the matter to CYS and the local police, resulting in the welfare check on November 9, 2021.

At the conclusion of the hearing, the trial court entered the order on appeal. Maternal Grandmother filed this timely appeal in which she presents three questions for our review:

I. Whether the trial court erred/abused its discretion by adjudicating [Child] dependent?

II. Whether the trial court erred/abused its discretion by removing [Child] from the physical custody of Maternal Grandmother?

III. Whether the trial court erred/abused its discretion by ordering supervised visitation with Maternal Grandmother?

Maternal Grandmother's Brief at 18.[1]

We conduct our review as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the

_____

[1] We note with disapproval that the Agency has not filed a brief.

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re E.B.***, 83 A.3d 426, 430 (Pa. Super. 2013).

The Juvenile Act defines dependent child, in relevant part, as follows:

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;

[…]

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

42 Pa.C.S.A. § 6302, Dependent child (1), (5). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." ***E.B.***, 83 A.3d at 431. "A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk[.]" ***Id.*** "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care

- 5 -

and control, and if so, whether such care and control are immediately available." *Id.*

In her first argument, Maternal Grandmother claims that the adjudication of dependency was improper because CYS did not articulate any safety concerns about the home. Rather, the referral that led to this dependency petition arose from Child's habitual truancy. Maternal Grandmother argues that Southern Columbia School District failed to follow the appropriate procedures[2] to address Child's truancy, and thus she apparently believes Child's truancy is not properly in issue.

_____

[2] Maternal Grandmother refers to 24 P.S. § 13-1333.1 of the Public School Code. § 13-1333.1, titled "Procedure by school when child habitually truant," which provides in relevant part as follows:

> (a) When a child is habitually truant and under fifteen (15) years of age at the time of referral, the school:
>
> > (1) Shall refer the child to either of the following:
> >
> > (i) A school-based or community-based attendance improvement program.
> >
> > (ii) The county children and youth agency for services or for possible disposition as a dependent child under the provisions of 42 Pa.C.S. Ch. 63 (relating to juvenile matters).
> >
> > (2) May file a citation in the office of the appropriate judge against the person in parental relation who resides in the same household as the child.
>
> […]
>
> > (d) **When referring a habitually truant child to the county children and youth agency or filing a citation with**

*(Footnote Continued Next Page)*

As quoted above, subsection one of the statutory definition of dependent child is child's lack of "education as required by law."  42 Pa.C.S.A. § 6302, Dependent child (1).  The Agency's petition, a pre-printed form, contains a checklist quoting the statutory bases for dependency.  The Agency checked the box next to subsection one, which addresses several issues including education, but the Agency did not check the box next to subsection five, which deals specifically with habitual truancy.[3]  Maternal Grandmother's argument ignores the fact that lack of education is cognizable under subsection one.

On that point, the record demonstrates Child's total failure to attend school during what would have been his eighth-grade year.  The record also demonstrates that Child's attendance issues went at least as far back as February of 2020.  Subsequently, during Child's 2020-2021 seventh-grade

_____

**the court because a child has been habitually truant, the school shall provide verification that a school attendance improvement conference was held.**

24 P.S. § 13-1333.1(a), (d) (emphasis added).  Given our disposition in the main text, we need not consider the effect of the school district's compliance, or lack thereof, with these dictates.

[3]  At the dependency hearing, the Guardian *Ad Litem* ("GAL") moved, over the objection of the Agency, to amend the petition to alleged dependency under subsection five.  The trial court granted the amendment and found Child dependent under both subsections one and five.  Maternal Grandmother does not directly challenge the order granting the GAL's motion, but for reasons explained in our memorandums at docket numbers 1635 MDA 2021 (Child's appeal) and 1636 MDA 2021 (Mother's appeal), we conclude the trial court erred.  We therefore vacate the dispositional order in all three cases insofar as the trial court found Child dependent under subsection five of the statutory definition of dependent child.

year, he failed two courses. Child then failed to complete summer remedial work that could have allowed him to move forward to eighth grade for the 2021-2022 school year. The Agency's repeated attempts to help the family address these issues were futile. The trial court did not err in finding that Child is dependent because he was not receiving an education as required by law. Maternal Grandmother's first argument fails.

Next, Maternal Grandmother argues the trial court erred in ordering Child removed from her home because there was no clear necessity to do so. "[E]ven after a child properly has been determined to be dependent, the court is not free to remove the child from parental custody. Removal may be ordered only where the evidence demonstrates a clear necessity for removal." *In re A.L.*, 779 A.2d 1172, 1175 (Pa. Super. 2001). Maternal Grandmother cites *A.L.*, argues that her home was safe, and concludes that Child should not have been removed from her home. As we have already explained, however, the evidence demonstrates a tragic, ongoing failure to see to Child's education. Child's truancy issues date at least as far back as February of 2020, and he has since failed seventh grade and then failed to complete remedial summer schoolwork. Maternal Grandmother fails to explain why these circumstances do not constitute a clear necessity to remove Child from the home.

Furthermore, when a CYS agent was able to enter the home on November 9, 2021, she reported seeing deplorable conditions, with dirty

clothes strewn about and animal feces everywhere. N.T. 11/18/21, at 62. Child smelled so bad the agent had to roll down the window of her car while transporting him away from the home. *Id.* at 65. While Agency personnel at earlier times reported no safety concerns with the home, it appears such concerns had arisen at the time of the instant referral. We find no merit in Maternal Grandmother's argument that the trial court erred in removing Child from the home.

In her third and final assertion of error, Maternal Grandmother argues the trial court erred in ordering supervised visitation. Maternal Grandmother cites *In re Mary Kathryn T.*, 629 A.2d 988 (Pa. Super. 1993), *appeal denied*, 639 A.2d 32 (Pa. 1994), for the proposition that visitation with a dependent child can be limited only where the parent or grandparent suffers from "severe mental or moral deficiencies" that pose a "grave threat" to the child. *Id.* at 995. Maternal Grandmother's argument misses the mark.

"The polestar and paramount concern in evaluating parental visitation, in dependency as well as non-dependency situations, is the best interests and welfare of the children." *In re C.J.*, 729 A.2d 89, 94 (Pa. Super. 1999). Maternal Grandmother does not explain how the trial visitation schedule was not in Child's best interest, nor does she explain why the visitation schedule constitutes so severe a restriction as to require application of the "grave threat" standard. We observe, for example, that the Pennsylvania Code provides that county agencies "shall provide opportunity for visits between the

child and parents as frequently as possible but **no less frequently than once every 2 weeks** at a time and place convenient to the parties and in a location that will permit interaction[….]" 55 Pa. Code. 3130.68 (emphasis added). We are cognizant that this provision governs county agencies but is not binding on reviewing courts. *C.J.*, 729 A.2d at 94. Regardless, § 3130.68, in condoning semi-weekly rather than weekly visitation, undermines Maternal Grandmother's argument that the visitation schedule was unlawfully restrictive. Because Maternal Grandmother's final argument finds no support in the law she cites, it fails.

In summary, we have concluded that none of Maternal Grandmother's arguments is meritorious. We therefore affirm the dispositional order insofar as it found Child dependent under 42 Pa.C.S.A. § 6302, Dependent child (1). We vacate insofar as the trial court found Child dependent under 42 Pa.C.S.A. § 6302, Dependent child (5).

Order of disposition affirmed in part and vacated in part. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/09/2022

- 10 -